UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:                                          7:07-CV-4778 (WCC)

INNOMED LABS, LLC,

                                                Chapter 7 Case

                        Debtor.

                                                Bankruptcy Case No. 02-22644 (ASH)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
HOGIL PHARMACEUTICAL CORP.
and HOWARD WENDY,

                        Appellants

        -against-

JEFFREY L. SAPIR, as Chapter 7 Trustee,

                        Appellee.

_____


_____

        BRIEF OF APPELLEE JEFFREY L. SAPIR, AS CHAPTER 7 TRUSTEE
_____


                        ROBINOWITZ COHLAN DUBOW & DOHERTY, LLP
                        Bruce Minkoff, Esq. (BM 8515)
                        199 Main Street Fifth Floor
                        White Plains, New York 10601
                        Telephone: (914) 949-2826
                        Facsimile: (914) 949-2826

                        Attorneys for Appellee

                        July 13, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF THE CASE ........................................................................... 1

ARGUMENT ..................................................................................................... 5

POINT I:      SPECIAL COUNSEL IS DISINTERESTED AND HOLDS NO
              ADVERSE INTEREST TO INNOMEDS' BANKRUPTCY ESTATE
              IN ACCORDANCE WITH 11 U.S.C. § 327 ........................................ 5

POINT II:     APPELLANTS' ALLEGATIONS THAT THE ALLEGED CLAIMS
              AGAINST MR. WENDY ARE TIME BARRED ARES NOT A BAR
              TO THE TRUSTEE'S INVESTIGATION ........................................... 18

POINT III:    THE RECORD ESTABLISHES THAT SPECIAL COUNSEL
              HAD NO ADVERSE INTEREST, WAS DISINTERESTED AND THE
              BANKRUPTCY COURT MADE SUFFICIENT FINDINGS TO SUPPORT
              ENTRY OF THE RETENTION ORDER ........................................... 20

CONCLUSION .................................................................................................. 22

## TABLE OF AUTHORITIES

Cases:

United States Trustee v. Bloom (In re Palm Coast,
　　　Matanza Shores Ltd. Partnership), 101 F.3d 253 (2nd Cir. 1996) .............................. 13,14

Hughes v. La Salle Bank, 419 F. Supp.2d 605, 612 (S.D.N.Y. 2006) ........................................ 15

Matter of Skorr v. Skorr Steel Corp., 29 A.D.3d 594, 595 (2nd Dept. 2006) .............................. 15

Oneida National Bank v. Kranz, 70 Misc.2d 595, 597-598 (Sup. Ct. Oneida Co. 1972) .......... 16

In re Vebeliunas, 231 B.R. 181 (Bankr. S.D.N.Y. 1999)
　　　appeal dismissed, 246 B.R. 172 (2000) ......................................................................... 17

Statutes:

11 U.S.C. § 327 ................................................................................................................ 5-6, 12-15

## PRELIMINARY STATEMENT

Appellee Jeffrey L. Sapir, as Chapter 7 Trustee of Innomed Labs, LLC (hereinafter "Appellee" or "the Chapter 7 Trustee"), submits this Brief in response to the Brief of Appellants Hogil Pharmaceutical Corp. and Howard Wendy (hereinafter respectively referred to as "Hogil" and "Mr. Wendy" and collectively referred to as "Appellants"). The appeal is from an Order of the Honorable Adlai S. Hardin, United States Bankruptcy Judge, signed on April 3, 2007. The Order appointed Robinowitz Cohlan Dubow & Doherty, LLP (hereinafter "RCD&D") as special counsel to Appellee to investigate possible claims by Debtor Innomed Labs, LLC (hereinafter "Innomed") against Appellants and, following consultation between Appellee and RCD&D, to commence such litigation against Appellants as mutually deemed appropriate by Appellee and RCD&D. For the reasons set forth herein, it is respectfully submitted that the Bankruptcy Court's Order should be affirmed in its entirety.

## STATEMENT OF THE CASE

At all relevant times, Hogil was and is engaged in the sale of pharmaceutical products. Hogil marketed and sold a pharmaceutical product for Innomed, Efidac 24 (hereinafter "the product"). Hogil was to be paid various specified expenses in connection with its marketing and sale of the product plus fifteen percent of the net sales after payment of the agreed upon expenses, with the remaining eighty five percent of the net sales to be remitted to Innomed.

Dr. Gilbert Spector (hereinafter "Dr. Spector") and Mr. Wendy were co-founders of Hogil and Innomed. Dr. Spector became an officer, director, employee and equity security holder of Innomed at its inception in 1998 and became an officer, director, employee and equity security holder of Hogil at its inception in 1989. Dr. Spector was terminated from his positions as an

1

officer, director and employee of Hogil and Innomed at the end of October 1999. Thereafter, Mr. Wendy controlled Hogil and Innomed. Hogil filed a Chapter 11 bankruptcy petition in November 1999. By Order granted in December 2000, Hogil's Chapter 11 Plan was approved. On April 30, 2002, Innomed filed a Chapter 11 bankruptcy proceeding. The case was converted to a Chapter 7 bankruptcy case in December 2002.

By application filed on October 17, 2006, Appellee sought to appoint RCD&D as special counsel to investigate various potential claims against Hogil and Mr. Wendy and, if the results of the investigation so warranted, to commence litigation against Hogil and/or Mr. Wendy. Pursuant to an agreement between Appellee and RCD&D and an agreement between RCD&D and Dr. Spector, who remains an equity security holder of Innomed and is a creditor of Innomed, RCD&D's fees and expenses are to be paid by Dr. Spector. Appellants filed an objection to the application, to which RCD&D filed a response on behalf of Appellee.

Hearings were held on the application on March 22, 2007 and on March 28, 2007. The Bankruptcy Court granted the application during the course of the proceedings held on March 28, 2007. An Order granting the application was signed on April 3, 2007.

Appellee's submissions to the Bankruptcy Court identified various areas of investigation with respect to potential claims against Appellants to be investigated by RCD&D. These potential claims and areas of investigation involved the following subjects.

Investigation of potential claims against Hogil:

(i) The disclosure statement to Hogil's Third Amended Plan of Reorganization in Hogil's bankruptcy proceeding filed in 1999 for which a plan of reorganization was approved in December 2000 set forth a claim by Innomed of $372,105.00. When the Innomed bankruptcy

2

proceeding was commenced, the Schedules filed by Innomed showed "Moneys due from affiliates" in the sum of $292,214.00. Hogil was the only affiliate of Debtor. These debts are to be investigated to determine whether or not they were paid and if there are sums still owed to Innomed for which an action can be maintained.

(ii) Investigation of whether additional sums because due from Hogil to Innomed after the Innomed bankruptcy proceeding was filed as a result of payments received by Hogil after the Innomed bankruptcy proceeding was filed as well as based upon credits which may be due from Hogil to Innomed.

(iii) Investigation of whether Hogil received money from lawsuits brought against various Hogil customers for nonpayment of sums owed to Hogil which included amounts owed for the sale of Innomed's product for which Hogil was required to pay a portion of the lawsuit proceeds to Innomed.

Investigation of potential claims against Mr. Wendy:

(i) Investigation of whether Mr. Wendy used Innomed's funds to acquire certain membership interests in Innomed in violation of Innomed's Amended and Restated Operating Agreement.

(ii) Investigation of the listing on Innomed's 2000 tax return and the 2000 Form K-1 issued by Innomed to Mr. Wendy of an $800,000.00 capital contribution by Mr. Wendy to Innomed which it is believed was never made by Mr. Wendy. Innomed's United States Tax Return, Form 1065, for the year 2000, together with accompanying Forms K-1, showed a capital contribution of $800,000.00 by Mr. Wendy to Innomed, reduced by $108,493.00 for transfer of members interests to Mr. Wendy, and an increase in Mr. Wendy's membership percentage.

3

These documents indicate that Mr. Wendy received an increased membership interest in Innomed and tax benefits from that interest for his share of net operating loss based upon the claimed capital contribution of $800,000.00, adjusted by what appears to be a prohibited transfer of membership interests to Mr. Wendy. The $800,000.00 capital contribution transaction was recorded while Mr. Wendy's wife was suing Dr. Spector and his wife for $800,000.00 on their guarantees of a loan obligation owed by Innomed to Gotham Bank which was acquired by Mrs. Wendy. The investigation seeks to determine if the claimed capital contribution was made and, if not, whether litigation can be brought against Mr. Wendy to recover the amount of the capital contribution or for unjust enrichment based upon tax benefits received as a result of the claimed contribution.

(iv) Investigation of potential claims arising from Mr. Wendy's control of both Hogil and Innomed which may have resulted in Hogil retaining funds for itself for distribution to Mr. Wendy and/or members of his family which should have been remitted to Innomed.[1]

After Appellants filed objections to the special counsel application and Appellee filed a response, the Bankruptcy Court held argument on Appellee's application and on Appellants' objections on March 22, 2007 and again on March 28, 2007. During the proceedings held on March 28, 2007, the Court granted the application and thereafter signed an Order granting the application on April 3, 2007.

---

[1] After approval of Hogil's bankruptcy plan, Hogil has been owned in its entirety by Mr. Wendy and/or members of his family, while Mr. Wendy's ownership percentage of Innomed has ranged from approximately twenty percent to approximately thirty percent.

4

ARGUMENT

POINT I

SPECIAL COUNSEL IS DISINTERESTED AND HOLDS NO ADVERSE INTEREST TO
INNOMEDS' BANKRUPTCY ESTATE IN ACCORDANCE WITH 11 U.S.C. § 327

The Bankruptcy Court properly granted the application because RCD&D is disinterested

and holds no adverse interest to Innomed's bankruptcy estate in accordance with 11 U.S.C. §

327. Appellee does not dispute that, as set forth at pages 4 and 5 of Appellants' Brief, the

retention of special counsel is governed by 11 U.S.C. § 327. However, contrary to Appellants'

contentions, Appellee respectfully submits that the Bankruptcy Court correctly determined that

the requirements of 11 U.S.C. § 327 were satisfied.

The provisions of 11 U.S.C. § 327 state as follows:

> Employment of professional persons
>
> a) Except as otherwise provided in this section, the trustee, with the court's
> approval, may employ one or more attorneys, accountants, appraisers, auctioneers,
> or other professional persons, that do not hold or represent an interest adverse to
> the estate, and that are disinterested persons, to represent or assist the trustee in
> carrying out the trustee's duties under this title.
>
> (b) If the trustee is authorized to operate the business of the debtor under section
> 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys,
> accountants, or other professional persons on salary, the trustee may retain or
> replace such professional persons if necessary in the operation of such business.
>
> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for
> employment under this section solely because of such person's employment by or
> representation of a creditor, unless there is objection by another creditor or the
> United States trustee, in which case the court shall disapprove such employment if
> there is an actual conflict of interest.
>
> (d) The court may authorize the trustee to act as attorney or accountant for the
> estate if such authorization is in the best interest of the estate.

5

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

(f) The trustee may not employ a person that has served as an examiner in the case.

Thus, pursuant to 11 U.S.C. § 327 (a), professionals hired by a trustee must not: "hold or represent an interest adverse to the estate" and must be: "disinterested persons." As more fully discussed below, the Bankruptcy Court correctly determined that RCD&D met these requirements.

In addition to 11 U.S.C. § 327 (a), Appellants seek to rely upon 11 U.S.C. § 327 (c). In accordance with 11 U.S.C. § 327 (c), where a professional whom a Trustee seeks to retain has been employed by or has represented a creditor, such employment or representation does not disqualify the professional from employment unless there is an objection by another creditor or the United States Trustee, in which case the employment shall be disapproved if there is an actual conflict of interest. Appellants' Brief does not identify any conflict of interest held by RCD&D in representing Appellee against Hogil and/or Mr. Wendy upon which the retention of special counsel can be overturned.

Appellants' Brief at page 5 also discusses 11 U.S.C. § 327 (e), which applies where the Trustee seeks to employ an attorney who has previously represented the debtor. Here, RCD&D has never represented Innomed. Therefore, 11 U.S.C. § 327 (e) is inapplicable.

Contrary to the assertions at page 6 of Appellants' Brief, the proceedings before the Bankruptcy Court establish that the Bankruptcy Court took into account the particular facts and

6

circumstances surrounding the Innomed bankruptcy case and the proposed retention before

making a decision; that the Bankruptcy Court exercised its discretion in a manner which it

believed best served the objectives of the bankruptcy system; that the Bankruptcy Court

considered the protection of the interests of the bankruptcy estate and its creditors; and the

Bankruptcy Court considered the efficient, expeditious and economical resolution of the

bankruptcy proceeding. (Document 4,[2] Transcript of March 22, 2007 Hearing, Bankruptcy

Docket No. 67 page 24, lines 17 to 24; page 27, lines 3 to 10; page 29, lines 1 to 5 and 8 to 16;

page 30, line 6 to page 31, line 7. Document 5, Transcript of March 28, 2007 Hearing, page 8,

lines 11 to 13; page 10, line 13 to page 11, line 3; page 11, lines 6 to 15; page 14, lines 3 to 13.)

Appellants' Brief at the last paragraph of page 6 states that there has been various

litigation between and among Dr. Spector, Mr. Wendy, their families, Hogil and Innomed going

back to 1999. However, such litigation is irrelevant to whether RCD&D is disinterested because

RCD&D had no involvement with any of the parties or any of the disputes prior to the summer of

2006 and had only minimal involvement for a short period of time beginning in the summer of

2006.

The first paragraph of page 7 of Appellants' Brief states that during the course of the

litigation, Dr. Spector and his wife: "were, and upon information and belief, continue to be,

represented by Mark Billhimer, Esq." Mr. Billhimer previously represented the Spectors in

litigation involving Hogil, the Wendys and Innomed, but no longer represents them. RCD&D

has never had any affiliation or connection with Mr. Billhimer of any kind and has never worked

---

[2] All references to Document numbers are to the Document numbers designated by
Appellants in their Designation Of Record and Statement Of Issues On Appeal.

with Mr. Billhimer in connection with any matter. Thus, any actions by Mr. Billhimer are irrelevant to whether RCD&D is disinterested or holds any adverse interest.

The statement at the first paragraph of page 7 of Appellants' Brief that during the course of litigation since 1999 Dr. Spector and his wife were represented by Mr. Billhimer marks a substantial retreat from the position which Appellants took in their Objection submitted to the Bankruptcy Court. In the Objection submitted to the Bankruptcy Court, Appellants argued that in connection with the litigation referred to, Dr. Spector and his wife: "were, and upon information and belief, continue to be, represented by Mark Billhimer, Esq., and/or the attorneys of Robinowitz, Cohlan, Dubow & Doherty, LLP." (Document 2, Objection of Hogil and Mr. Wendy to Application to Retain Special Counsel, Bankruptcy Docket No. 52, paragraph 9.) In fact, RCD&D never represented Dr. Spector, his wife or any member of the Spector family in the litigation referred to by Appellants; RCD&D never had any contact of any kind with Dr. Spector until the end of July 2006; and RCD&D was not involved with the litigation matters which Appellants allegedly cause RCD&D to hold interests adverse to the estate and to not be disinterested. (Document 3, Response To Objection To the Application To Retain Special Counsel, Bankruptcy Docket No. 54, paragraphs 19 through 26.)

The second paragraph of page 7 of Appellants' Brief questions the extent of RCD&D's prior representation of Dr. Spector and insinuates that RCD&D represented Dr. Spector to a greater extent than was set forth in the initial submissions in support of the retention application. (Document 1, Application To Employ Special Counsel, Bankruptcy Docket No. 51, Affidavit of Alan M. Dubow, Esq., paragraph 4.) Contrary to Appellants' insinuation, RCD&D's prior representation was limited to the matters set forth in the retention application, which was further

8

detailed in RCD&D's response to Appellants' objections. (Document 3, Response To Objection To the Application To Retain Special Counsel, Bankruptcy Docket No. 54, paragraphs 22 through 26.) Appellants' insinuation that RCD&D represented Dr. Spector against Mr. Wendy, his wife, his family, Innomed and/or Hogil to a greater extent than was disclosed without providing details of such representation is disingenuous since Appellants know the extent to which Mr. Wendy, his wife, members of his family, Innomed and/or Hogil were parties to any action in which RCD&D represented an adverse party.

The suggestion at the last paragraph of page 7 of Appellants' Brief that RCD&D is not disinterested because its fees and expenses are to be paid by Dr. Spector with Dr. Spector taking a superpriority administrative claim must be rejected. Appellants' argument is belied by the nature and circumstances of RCD&D's retention.

Paragraph 2 (e) of the Agreement between the Chapter 7 Trustee and RCD&D (Document 1, Application To Employ Special Counsel, Bankruptcy Docket No. 51, Agreement Between Jeffrey Sapir, Esq. and Robinowitz Cohlan Dubow & Doherty, LLP) provides that such litigation shall be commenced: "as the Trustee and RCD&D shall mutually deem appropriate." Thus, RCD&D can not commence any litigation without the approval of the Chapter 7 Trustee. If RCD&D fails to act in a disinterested manner and/or fails to use detached judgment in investigating possible claims, the Chapter 7 Trustee will not approve the commencement of litigation based upon such claims.

Furthermore, pursuant to paragraph 4 of the Agreement between RCD&D and the Chapter 7 Trustee: "no fees and/or expenses shall be paid to RCD&D until RCD&D applies for and obtains approval of the Court." Thus, if RCD&D fails to pursue a disinterested investigation

9

and/or pursues claims which are not the product of a disinterested evaluation, the Bankruptcy Court will not approve applications for fees and expenses for such investigations and claims. In addition, as stated by the Bankruptcy Court, the rules against frivolous conduct in civil litigation provide an additional reason why RCD&D will act in a disinterested manner. (Document 5, Transcript of March 28, 2007 Hearing, page 11, lines 6 to 15.)

Appellants' Brief at Point A (iii) argues that RCD&D's representation of both the Trustee and Dr. Spector as equity security holder is impermissible. Appellants' Brief argues at the second paragraph of page 8 that RCD&D represented Dr. Spector and his wife as recently as September 2006, while ignoring the fact that RCD&D's prior representation of the Spectors was so minimal that it did not and could not create an adverse interest or cause RCD&D to not be disinterested. RCD&D's prior representation of the Spectors is as follows. (Document 3, Response To Objection To the Application To Retain Special Counsel, Bankruptcy Docket No. 54, paragraphs 19 through 26.)

Mr. Wendy's wife, Diana Wendy, sued the Spectors for attorneys fees in connection with a guarantee of a promissory note. After a judgment was rendered in favor of Mrs. Wendy against the Spectors was paid, Mr. Billhimer on behalf of the Spectors filed a third-party action against Mr. Wendy seeking contribution since Mr. Wendy had also guaranteed the promissory note. After Mr. Billhimer stopped representing the Spectors and before an application to appoint RCD&D as special counsel was made, Dr. Spector requested that RCD&D ascertain the status of the third-party action as Mr. Billhimer had ceased communicating with the Spectors and had failed to turn over files to Dr. Spector as requested by Dr. Spector and directed by the Bankruptcy Court on June 28 2006.

When RCD&D reviewed the New York Unified Court System Future Court Appearance website and the County Clerk's minutes, RCD&D determined that a Decision had been rendered by the Honorable Kenneth W. Rudolph on or about January 10, 2006. However, when RCD&D tried to obtain a copy of the Decision from the Westchester County Clerk, the Decision was not in the County Clerks' file. RCD&D then attempted to obtain a copy of the Decision from Justice Rudolph's Part as suggested by the County Clerk's office, but was informed by Justice Rudolph's Law Secretary that the Decision could not be provided to RCD&D since it was not the attorney of record in the action. RCD&D then prepared a Notice of Appearance which was sent to Justice Rudolph on September 6, 2006 and filed the next day.

In response, by letter dated September, 7, 2006, the Court scheduled a conference for September 20, 2006. The attorney representing Mr. Wendy in that action then sent a letter to the Court objecting to the conference upon the grounds that there was no longer any action pending. RCD&D attended the conference on September 20, 2006, at which RCD&D was informed that there was no longer any action pending, that the third-party action for contribution had been dismissed without prejudice because it was procedurally improper and that the contribution claim had to be brought as a separate action.

Thus, the representation "as recently as September of 2006" referred to by Appellants consisted of RCD&D attempting to obtain a copy of a Decision in order to determine the status of an action, filing a Notice of Appearance in order to obtain the copy of the Decision and appearing at the Court's directive at a conference at which the Court informed RCD&D that the action was no longer pending. The only other representation of the Spectors by RCD&D was RCD&D's representation of the Spectors during August 2006 through September 2006 in

11

objecting to a proposed sale to Hogil of Innomed's claims against Hogil for $10,000.00, but Appellants' Brief does not raise this representation as a grounds for reversal of the Bankruptcy Court's Order.

Thus, RCD&D's minimal representation of the Spectors took place before the application to appoint RCD&D as special counsel was filed and took place more than six months before the application was granted. This minimal representation does not constitute an adverse interest for RCD&D or cause RCD&D to fail the disinterestedness test.

The third paragraph of page 8 of Appellants' Brief states that RCD&D "represents Dr. Spector and his wife." As demonstrated above, RCD&D did not at the time of the application to appoint special counsel represent the Spectors and has not represented the Spectors since September 2006. As further demonstrated above, the statement in the present tense that RCD&D "represents Dr. Spector and his wife" was not true as of the time the application to appoint special counsel was made, was not true as of the time Appellants filed their objection to the appointment of special counsel, was not true as of the time the application to appoint special counsel was granted and was not true as of the time Appellants' Brief was filed.

The third paragraph at page 8 of Appellants' Brief next asserts that the Spectors are creditors of Innomed, that Dr. Spector is an equity security holder and that although 11 U.S.C. § 327 (c) permits the simultaneous representation of a trustee and a creditor in the absence of an actual conflict, that provision does not permit the simultaneous representation of the trustee and an equity security holder. Appellants' Brief then states that the Court can not assume that the absence of a comparable provision means that this Court is free to supply one. However, the

12

assertion that RCD&D represents the Spectors and/or Dr. Spector is false for the reasons demonstrated above.

Furthermore, the argument that simultaneous representation of a trustee and an equity security holder is not permitted by 11 U.S.C. § 327 (c) must be rejected as it is based upon a fundamentally flawed analysis. The authorizing provision for a trustee to retain special counsel is not 11 U.S.C § 327 (c), but 11 U.S.C. § 327 (a), which provides as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Thus, an attorney who does not hold or represent an interest adverse to the estate and is disinterested, including an attorney who represents an equity security holder, can act as special counsel since there is no provision in 11 U.S.C. § 327 which prohibits an attorney who meets the requirements of 11 U.S.C. § 327 (a) from acting as special counsel to the trustee while representing an equity security holder. Therefore, even if RCD&D now represented the Spectors or Dr. Spector, RCD&D could still act as special counsel to the Trustee.

Neither United States Trustee v. Bloom (In re Palm Coast, Matanza Shores Ltd. Partnership), 101 F.3d 253 (2nd Cir. 1996) nor the rule of statutory construction *expression uniuis est exclusivio alterius* which are discussed at pages 8 and 9 of Appellants' Brief are relevant to any of the issues herein.

The issue in United States Trustee v. Bloom was whether the Trustee could employ his own real estate firm. The Court stated that conflicting interpretations of 11 U.S.C. § 327 (d)

13

were possible.  One interpretation would permit the retention because the retention was not

expressly prohibited by 11 U.S.C. § 327 (d).  The other interpretation would prohibit the

retention because 11 U.S.C. § 327 (d) permitted the trustee to act as attorney or accountant for

the estate, but did not authorize any other professional to act for the estate.  In view of these

conflicting interpretations, the Court looked to the common law of trusts to determine that the

retention would not be permitted under the common law of trusts and further stated that under the

rule of *expression uniuis est exclusivio alterius*, only trustee attorneys or trustee accountants

could act as professionals on behalf of the estate.

Here, in contrast to <u>United States Trustee v. Bloom</u>, none of the exceptions set forth in 11

U.S.C. § 327 apply, so RCD&D's retention is governed by 11 U.S.C. § 327 (a), which is not

subject to conflicting interpretations.  Since RCD&D's retention is governed solely by statute, 11

U.S.C. § 327 (a), there is no basis to apply common law principles and there is no exception

involved for which the rule of *expression uniuis est exclusivio alterius* can apply.  As such, there

is no prohibition under 11 U.S.C. § 327 (a) against a trustee's retention of special counsel who

has represented an equity security holder.

Appellants' Brief argues commencing at the next to last paragraph of page 9 and

continuing on page 10 that RCD&D has an interest adverse to Innomed's bankruptcy estate

because Innomed and Hogil allegedly have claims against the Spectors.  Appellants' argument

must be rejected for multiple reasons.

First, the retention of RCD&D was on behalf of the Chapter 7 Trustee to pursue claims

on behalf of the Chapter 7 Trustee and Innomed, not on behalf of the Spectors.  No counterclaims

could be asserted against the Chapter 7 Trustee for any alleged misconduct by the Spectors in any action commenced by RCD&D on behalf of the Chapter 7 Trustee.

Second, as acknowledged, but then glossed over at the bottom of page 9 of Appellants' Brief, any possible claims against the Spectors are time barred since Dr. Spector was removed as an officer and employee of Hogil and Innomed in 1999 and has had no involvement with those companies since 1999. Thus, any alleged claims against the Spectors accrued more than seven years ago. The statute of limitations for breach of fiduciary duty where the claim seeks monetary damages is three years and is not subject to tolling. Hughes v. La Salle Bank, 419 F. Supp.2d 605, 612 (S.D.N.Y. 2006). The statute of limitations for alleged diversion of a corporate opportunity is six years. Matter of Skorr v. Skorr Steel Corp., 29 A.D.3d 594, 595 (2nd Dept. 2006). Thus, there can be no claims against the Spectors.

Third, the alleged claim on behalf of Innomed as described in Appellants' Brief is barred by *res judicata* and/or collateral estoppel. On March 3, 2000, PD Consulting Corp., the entity identified at page 9 of Appellants' Brief, commenced a lawsuit in Supreme Court, Westchester County, Index No. 2896-00, against Innomed. PD Consulting Corp. was granted summary judgment in the lawsuit on June 29, 2000 and judgment was entered in favor of PD Consulting Corp. on July 17, 2000. (Document 3, Response To Objection To the Application To Retain Special Counsel, Bankruptcy Docket No. 54, paragraph 40 and Exhibit "G".) The issue of the propriety of the services rendered by PD Consulting Corp. was necessarily decided in that action in determining that Innomed was liable to PD Consulting Corp.

Fourth, the contention at the first paragraph of page 10 of Appellants' Brief that RCD&D represents the Spectors and thus may not be retained pursuant to 11 U.S.C. § 327 (a) because the

15

Spectors have interests adverse to the Innomed bankruptcy estate must be rejected because it is based upon the incorrect premise that RCD&D represents the Spectors and, as discussed above, the minimal prior representation does not create an adverse interest.

Fifth, if Innomed had valid claims against the Spectors, presumably Innomed would have attempted to pursue those claims while it was a debtor-in-possession under Mr. Wendy's control and would have sought to have the Chapter 7 Trustee pursue the claims after the case was converted to Chapter 7. Likewise, if Hogil believed it had valid claims against the Spectors, presumably Hogil would have pursued those claims following confirmation of Hogil's Third Amended Plan of Reorganization on December 8, 2000. The complete failure by Innomed prior to and after the bankruptcy filing and the complete failure by Hogil from the time of confirmation of its plan of reorganization through the determination of the application to appoint special counsel to take any action in connection with their alleged claims against the Spectors further establishes that there is no validity to any alleged claims by Innomed or Hogil against the Spectors. Cf., Oneida National Bank v. Kranz, 70 Misc.2d 595, 597-598 (Sup. Ct. Oneida Co. 1972) (conclusive presumption of payment where action is commenced after statute of limitations has run and inference of payment based upon delay in commencing action where there is substantial delay in commencing action on claim which is not time barred).

The allegations at the second and third paragraphs of page 10 of Appellants' Brief that RCD&D has been involved in pursuing a litigation strategy designed to harass Mr. Wendy and has represented the Spectors in lawsuits designed to harass Mr. Wendy are likewise baseless. Appellants' Brief does not identify any lawsuits commenced by RCD&D against Mr. Wendy because RCD&D has never commenced any lawsuit against Mr. Wendy. The only lawsuit

16

against Mr. Wendy in which RCD&D was involved was the terminated lawsuit in which RCD&D filed a Notice of Appearance as discussed above, while the only pending proceeding in which RCD&D represented the Spectors was the objection filed in the Innomed bankruptcy proceeding to the sale of Innomed's claims against Hogil to Hogil for $10,000.00. Thus, RCD&D has never represented the Spectors in any pending lawsuit against Mr. Wendy.

RCD&D's minimal representation of the Spectors does not constitute a litigation strategy designed to harass Mr. Wendy, nor does it constitute bias or prejudice toward a party in interest.

Appellants' attempted reliance at page 10 of Appellants' Brief upon In re Vebeliunas, 231 B.R. 181 (Bankr. S.D.N.Y. 1999) appeal dismissed, 246 B.R. 172 (2000) is misplaced. There, it was held that counsel for the trustee was not disinterested because of statements counsel had made about the debtor. The matters addressed in In re Vebeliunas are completely irrelevant to the issues herein.

The argument at the final paragraph of page 10 of Appellants' Brief which continues on page 11 that RCD&D can not meet the standard of impartiality and detached judgment must be rejected since there is no merit to the various assertions set forth in support of the argument.

The assertion that RCD&D has represented the Spectors in lawsuits designed to harass Mr. Wendy is false for the reasons previously set forth above.

The fact that RCD&D's fees and expenses are to be paid by Dr. Spector in no way establishes that RCD&D will not exercise impartiality and detached judgment since, as set forth above, the Trustee will not approve any litigation which is not the product of impartial and detached judgment and the Bankruptcy Court will not approve any legal fees incurred for services which it determines were not the product of impartial and detached judgment.

17

The assertion that Dr. Spector intends to pursue a "vendetta" against Mr. Wendy and his family is hyperbole which can not overcome the grounds for conducting an investigation which were presented to the Bankruptcy Court and largely ignored by Appellants' Brief.

The assertion that Dr. Spector's sole motivation is to harass Mr. Wendy and his family and is not motivated by a desire to receive a return on the funds expended for special counsel must be rejected.  Dr. Spector and his wife are creditors of Innomed who would stand to recover part of their claims if litigation is commenced against one or both of the Appellants and results in a recovery to the Innomed bankruptcy estate

The assertion that Dr. Spector is calling the shots, not the Trustee, is completely baseless. As set forth above, no litigation can be commenced without the Trustee's approval and all actions by RCD&D are subject to the Bankruptcy Court's review and approval.

POINT II

APPELLANTS' ALLEGATIONS THAT THE ALLEGED CLAIMS AGAINST MR. WENDY
ARE TIME BARRED ARE NOT A BAR TO THE TRUSTEE'S INVESTIGATION

The argument at Point B of Appellants' Brief that the Order appointing RCD&D as special counsel should be reversed because the alleged claims against Mr. Wendy would be time barred must be rejected.

Initially, it must be noted that while Appellants' Brief asserts that any claims against Mr. Wendy are beyond any applicable statute of limitations, Appellants' Brief does not assert that any claims against Hogil are time barred.

The assertion at the last paragraph of page 11 of Appellants' Brief which continues on page 12 that avoidance actions are barred by the statute of limitations is irrelevant because the

18

special counsel retention application did seek retention for the purpose of investigating and instituting avoidance actions.

With respect to the claims against Mr. Wendy, as set forth at pages 3 and 4 above, the possible claims against Mr. Wendy based upon his claimed capital contribution of $800,000.00 were reported on Innomed's 2000 tax return which was signed by Innomed's accountant on July 17, 2001 (Document 3, Response To Objection To the Application To Retain Special Counsel, Bankruptcy Docket No. 54, Exhibit "B") and were thereafter signed by Mr. Wendy on behalf of Innomed on an unknown date. Thus, for purposes of determining whether an investigation of the transactions should proceed, the evidence is sufficient to establish accrual of the claims on or after July 17, 2001 upon the signing and filing of Innomed's 2000 tax return.

The assertion at the first full paragraph of page 12 of Appellants' Brief that any improprieties with respect to the filing of tax returns are within the purview of the Internal Revenue Service and the Trustee lacks standing to bring such claims because Debtor is a limited liability company misstates the nature of the potential claim with respect to the tax returns.

In order to report an $800,000.00 capital contribution on Innomed's tax returns and to receive tax benefits for the contribution, Mr. Wendy was required to make the capital contribution. Failure to make the capital contribution as of the time it was reported raises possible claims on behalf of Innomed against Mr. Wendy for the amount of the capital contribution and/or possible claims against Mr. Wendy for unjust enrichment for tax benefits received from the claimed contribution for which Innomed received no benefit. The purpose of the investigation with respect to the capital contribution is to determine the facts surrounding the

19

capital contribution in order to determine if there are claims which can be brought and the timeliness of the claims.

While reporting a capital contribution which was never made and claiming deductions based upon the capital contribution would raise issues which are within the purview of the Internal Revenue Service rather than the Trustee, those issues are separate from the issues of whether Innomed has claims against Mr. Wendy for reporting the capital contribution if he did not make the capital contribution, an issue which is within the purview of the Trustee.

With respect to the investigation of potential claims against Mr. Wendy arising from his control of Innomed and Hogil in order to determine if the companies were operated in a manner which caused Hogil to retain funds for distribution to Mr. Wendy and/or members of his family which should have been remitted to Innomed, Mr. Wendy controlled Innomed through December 2002 when the Chapter 7 Trustee was appointed. Thus, there is a substantial period if time during which Mr. Wendy controlled Innomed and Hogil for which claims could be brought of the results of the investigation so warrant.

## POINT III

### THE RECORD ESTABLISHES THAT SPECIAL COUNSEL HAD NO ADVERSE INTEREST, WAS DISINTERESTED AND THE BANKRUPTCY COURT MADE SUFFICIENT FINDINGS TO SUPPORT ENTRY OF THE RETENTION ORDER

Contrary to the assertions at Point C of Appellants' Brief, the Bankruptcy Court determined that RCD&D held no adverse interest to the bankruptcy estate and that Appellants had failed to establish that RCD&D was not disinterested. Furthermore, even in the absence of a written opinion or decision, it is indisputable that RCD&D held no adverse interest and was disinterested.

20

With respect to whether RCD&D held an interest adverse to the Innomed bankruptcy estate, Judge Hardin stated during the proceedings on March 28, 2007 that with respect to the limited purposes for which RCD&D was to be retained by the Trustee: "In that capacity there is no adversity between the firm and it client, Dr. Spector, its threshold client and the estate. I think there's no doubt about that." (Document 4, Bankruptcy Docket No. 67 at page 8, lines 11 to 13.) Thus, Judge Hardin explicitly determined that there was no adverse interest.

With respect to whether RCD&D was disinterested, Judge Hardin addressed and rejected Appellants' arguments that RCD&D had a conflict of interest based upon its relationship with Dr. Spector. After acknowledging the hostility and antipathy between Dr. Spector and Appellants, Judge Hardin stated: "But that does that antipathy and that conflict bar the representation of the estate against Hogil and Wendy? I'm not - - I don't - - I'm not sure I'm getting that." (Document 4, Bankruptcy Docket No. 67 at page 13, lines 7 to 9.) Therefore, Judge Hardin explicitly rejected Appellants' argument that the disinterestedness requirement was not satisfied.

Thus, contrary to Appellants' argument, Judge Hardin determined that RCD&D held no adverse interest to Innomed's bankruptcy estate and that Innomed was disinterested.

Furthermore, Appellants' argument that RCD&D had an adverse interest and is not disinterested must be rejected because, as demonstrated above, it is based upon the inaccurate premise that RCD&D represented the Spectors in multiple lawsuits against Appellants and Mr. Wendy's family, when in fact RCD&D has never represented the Spectors in any lawsuit against members of Mr. Wendy's family, the one lawsuit in which RCD&D appeared was already

21

terminated at the time of the appearance and RCD&D has never represented the Spectors in any lawsuit against Hogil.

## CONCLUSION

Based upon the foregoing, it respectfully requested that the Order by the Honorable Adlai S. Hardin, United States Bankruptcy Judge, granted on April 3, 2007 appointing Robinowitz Cohlan Dubow & Doherty as special counsel to Jeffrey Sapir, Chapter 7 Trustee, be affirmed in its entirety, together with such other and further relief which as to the Court may seem just and proper.

Dated: White Plains, New York
      July 13. 2007

                                    Robinowitz Cohlan Dubow & Doherty, LLP

By:    /s/ Bruce Minkoff
        Bruce Minkoff, Esq. (BM 8515)
        Special Counsel to Jeffrey L. Sapir,
        Chapter 7 Trustee
        199 Main Street - Fifth Floor
        White Plains, New York 10601
        (914) 949-2826

22