UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| INNOMED LABS, LLC, | 7:07-cv-4778 (WCC) |
| Debtor. | Chapter 7 Case |
| HOGIL PHARMACEUTICAL CORP. and HOWARD WENDY, | Bankruptcy Case No. 02-22644 (ASH) |
| Appellants, | |
| v. | |
| JEFFREY L. SAPIR, as Chapter 7 Trustee, | |
| Appellee. | |

**REPLY BRIEF OF APPELLANTS
HOGIL PHARMACEUTICAL CORP. AND HOWARD WENDY**

KLESTADT & WINTERS, LLP
Tracy L. Klestadt (TK-3591)
Patrick J. Orr (PO-7617)
292 Madison Avenue, 17th Floor
New York, New York 10017
Tel. (212) 972-3000
Fax: (212) 972-2245

Attorneys for Appellants

July 25, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………..……………….i

PRELIMINARY STATEMENT……………………………………………………….....1

ARGUMENT…………………………………………………………………………...…2

      The Pretense of the Spectors' Motivation …………………………..…..…..2

      Irrelevance of Capital Contribution Issues to the Estate…………………………….4

      Double Standard for Statute of Limitations Argument………………..………6

CONCLUSION……………………………………………………………………..…..6

i

# TABLE OF AUTHORITIES

Statutes:

11 U.S.C. §327(a)…………………………………………………………………………………1, 3

11 U.S.C. §327(c)……………………………………………………………………………………3

11 U.S.C. § 704(a)(5)………………………………………………..…………………………….3

28 U.S.C. §701…………………………………………………………………………………....5

**PRELIMINARY STATEMENT**

Hogil Pharmaceutical Corp. ("Hogil") and Howard Wendy (collectively with Hogil, "Appellants"), by and through their attorneys, Klestadt & Winters, LLP, hereby reply to the brief submitted by Appellee[1] (the "Appellee's Brief") in response to the brief submitted by Appellants (the "Appellants' Brief") in support of their appeal from the Order Authorizing Jeffrey L. Sapir, Esq., Chapter 7 Trustee (the "Trustee"), to Retain and Employ Robinowitz Cohlan Dubow & Doherty, LLP ("Robinowitz" or "Special Counsel") as Special Counsel to the Chapter 7 Trustee, signed on April 3, 2007, by the Honorable Adlai S. Hardin, United States Bankruptcy Judge, in the above-captioned Chapter 7 bankruptcy case (the "Retention Order") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

The Appellee's Brief is an exercise in one-sided story telling. At the very essence of the Special Counsel's argument is the idea that Special Counsel's retention is simply a "freebie for the estate"[2] and that, as such, all other concerns are secondary to this primary benefit. From the perspective of Special Counsel and the Spectors, this is the only side of the story they want the Court to hear. As the old adage goes, there are two sides to every story and the Special Counsel, the Trustee, the Spectors and the Bankruptcy Court have, thus far, failed to acknowledge the other more salient side to this story. The totality of the circumstances surrounding the retention of Special Counsel, if one takes the time to look at them, render Special Counsel's retention inappropriate under 11 U.S.C. §327(a). In the Appellee's Brief, Special Counsel goes to great lengths to attempt to explain away myriad issues which should leave the Court with one underlying impression – they are simply not disinterested.

---

[1] All capitalized terms not otherwise defined herein shall the meanings ascribed to them in the Appellant's Brief.
[2] See March 28 Hearing Transcript at p. 2.

1

The inevitable collateral damage of authorizing such a "freebie" arrangement includes a morass of discovery practice, the liberty to proceed against the Appellants without having to clearly articulate any of the claims against either of the Appellants and the veritable hijacking of the Bankruptcy Court for the purposes of harassing an ex-business partner.

For each chapter of the Special Counsel's one-sided story, Appellants have set forth herein the other side, thereby providing this Court with the entirety of the issues that must be considered when reviewing the Retention Order and should have been considered by the Bankruptcy Court.  Appellants respectfully submit that, when the entirety of these issues is reviewed, the Retention Order must be viewed as more than simply a "freebie for the estate" and, in fact, its entry was improper.

## ARGUMENT

### I.   The Pretense of the Spectors' Motivation

Tellingly, after spending several pages describing at length how tenuous any prior relationship between the Spectors and the Special Counsel was, Special Counsel then zealously defends the Spectors' motivations as financiers of the Special Counsel's investigation. (Appellee's Brief, pp. 5-17.)   In focusing on only one side of the story, Special Counsel asserts that the Spectors' motivation is not to harass the Appellants but, rather, is strictly pecuniary and that any use of the word "vendetta" is "hyperbole". (Appellee's Brief, p. 18.)  The Appellee's Brief asserts that as "creditors of Innomed who stand to recover part of their claims if litigation is commenced against one or both the Appellants", and, therefore, their motivations have nothing to do with harassment. (Appellee's Brief, p. 18.)

This refutation of the characterization of the Spectors' motivations as ulterior appears for the first time on the record in this matter in the Appellee's Brief, including with respect to the

2

Bankruptcy Court proceedings and, as such, an analysis of the Spectors' alleged stake in this matter is required for the Court have both side of this story. A review of the creditor pool in this Chapter 7 case belies how ridiculous the assertion is that the Spectors' motivations have anything to do with the recovery of money. Myra Spector filed a one-page proof of claim against the Debtor in the amount of $736,292.13 with no supporting documentation and scant details on the face of the claim. Dr. Gilbert Spector also filed one-page proofs of claim in the amount of $520,001.36 for "salary" and a second for "20% value of the company"[3]. Neither of these proofs of claim is accompanied by any support and all three would surely be subject to objection to the extent (1) a proper analysis of the claims occurred and/or (2) such an analysis/objection made sense from the perspective of the estate. 11 U.S.C. § 704(a) (which, prior to the amendments to the Bankruptcy Code, effective as of October of 2005, was set forth as 11 U.S.C. § 705(5)) requires that [t]he trustee shall, if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper. 11 U.S.C. § 704(a)(5). However, when an estate has no assets, like this one, claims objections are unnecessary. The Bankruptcy Court's claims register for this case indicates a total claims pool of $8,363,124.94, including the judgment held by Alza Corporation in the amount of $3,053,015. Again, the estate currently has no assets. While the Special Counsel has yet to articulate with sufficient detail the nature and extent of the alleged claims against the Appellants, any recovery against the Appellants based on what has been disclosed in the Special Counsel's papers, would provide for a minute dividend percentage in light of the size of the claims pool. After the analysis and objections to claims by

---

[3] It is also important to note that Dr. Spector's second claim is not a claim but, rather, an equity interest, which would only be paid after all other claims are paid in full with interest. It is also further evidence that Special Counsel is simultaneously representing both an equity holder and the Trustee – an arrangement not permitted as an exception under 11 U.S.C. § 327(c) to the disinterested requirements of 11 U.S.C. § 327(a).

3

the Trustee, a prerequisite for distributions, the financial benefit to the Spectors would be *de minimis,* to the extent they are left with any claims.

In a similar discussion in the Appellee's Brief, the Special Counsel makes the statement that any assertion that Dr. Spector is "calling the shots" is "baseless" and that, in any event, the Retention Order provides that no litigation may been commenced without the Trustee's approval. (Appellee's Brief, p. 18.)   In the first instance, upon a review of any of the pleadings filed by the Special Counsel in this matter, it is abundantly clear that the Trustee's personal knowledge was not the source of the factual allegations set forth *ad nauseum* in each pleading – the Spectors were.  Secondly, while the Retention Order does require consultation with the Trustee with respect to the filing of a complaint against the Appellants, nothing therein requires consultation or authorization with respect to actions taken by Special Counsel *prior to* the filing of a complaint.  Accordingly, so long as no complaint is filed, Special Counsel is free to notice multiple depositions of the Appellants, serve numerous and overly broad discovery demands and capitalize and otherwise harass and hold up the Appellants without any sort of deadlines or parameters.  This is the very scenario the Appellants sought to avoid by objecting to the entry of the Retention Order and one that the Bankruptcy Court should have also prevented.  This is also the very end that the Spectors sought to achieve.

Upon review of the facts constituting both sides of the story, the only apparent motivation that remains is the intention to harass and pursue a vendetta against the Appellants.

## II.     Irrelevance of Capital Contribution Issues to the Estate

The record is riddled with ambiguous and unsubstantiated allegations by the Special Counsel relating to an entry on the Debtor's 2000 tax return which indicates a capital contribution by Mr. Wendy to the Debtor in the amount of $800,000.  (See, e.g., Appellee's

4

Brief, pp. 3, 4, 19, 20) Whatever these allegations are, they appear to be based on someone's "belief" that this capital contribution was never made. In the Appellee's Brief, a barely coherent articulation of this alleged claim is again set forth, which, perhaps strategically, wholly misses the point. (Appellee's Brief, pp. 3, 4, 19, 20)

Here, as before the Bankruptcy Court, Special Counsel obscures this issue – to the extent it even exists – by asserting that "the investigation seeks to determine if the claimed capital contribution was made and, if not, whether litigation can be brought against Mr. Wendy to recover the amount of the capital contribution or for unjust enrichment based upon tax benefits received as a result of the claimed contributions." The Bankruptcy Court was evidently satisfied that this statement, whatever means, justifies investigation by a Special Counsel and a prolonging of this previously closed bankruptcy case. However, what the Bankruptcy Court failed to consider and what this Court must, is that Debtor is a limited liability company ("LLC"). The Special Counsel's allegations, which the Appellants dispute, if true, leave the Debtor's estate wholly unaffected –either positively or negatively. As a LLC, the Debtor was, at the time of the alleged improper capital contribution, a tax reporting entity and not a tax paying entity. See Internal Revenue Code, 26 U.S.C. § 701 ("A partnership as such shall not be subject to the income tax imposed by this chapter.") The K-1 referenced on page 3 of the Appellee's Brief, and not otherwise referenced in the record in this matter, whether valid or invalid (and actually reversed by a amended personal income tax return filed by Mr. Wendy but conveniently not mentioned in Appellee's Brief), did not add one penny to the Debtor's liabilities nor did it subtract one penny of the Debtor's assets. Therefore, the Trustee, as the representative of the Debtor's estate and successor-in-interest to all of the Debtor's rights and causes of action, can have no claim whatsoever based on these allegations, even if the relevant activity was not

otherwise barred by the applicable statutes of limitations (see *infra*). To the extent these allegations somehow relate to an unrelated error Mr. Wendy made on his personal income tax return, this claim lies with the federal government and not the Trustee.

### III.  Double Standard for Statute of Limitations Argument

The very best example of the Special Counsel choosing to focus only on one side of the story and otherwise omitting the other is the discussion on page 15 of the Appellee's Brief, in which the Special Counsel, again, prospectively defends any alleged claims against the Spectors as time-barred. (Appellee's Brief, p. 15.)  The Special Counsel is evidently aware of the statute of limitations for both breach of fiduciary duty claims and alleged diversion of a corporate opportunity and even cites case law where such statues are applied. (Appellee's Brief, p. 15.) However, in its capacity as an alleged agent of the Trustee and independent fiduciary of the estate, the Special Counsel has chosen not to apply the very same statue of limitations in reviewing claims against the Appellants.  In a record rampant with inconsistencies, this discussion is the most overt.

The longest statute of limitations in the state of New York for the claims generally alleged against the Appellants is six years.  All of the claims allegedly being investigated by the Special Counsel occurred more than six years ago and any attempt by the Special Counsel to argue that a statute of limitations was tolled should be given the limited credence it deserves.

### CONCLUSION

This Court, now having the benefit of both sides of the story, should find that once the allegations against the Appellants, which were the legs upon which the Retention Application stood, are eliminated as pretenses for the use of the Bankruptcy Court to continue a pattern of

6

harassment, the lack of disinterestedness of Special Counsel is apparent. This investigation is not the "freebie" it was billed to be. It is a costly, time and resource consuming exercise and it is incumbent upon this Court to prevent such abuse of the process. At its essence, this case represents the hijacking of the processes available under the Bankruptcy Code by one former business partner to harass another.

WHEREFORE, for all of the reasons stated above and in the Appellants' Brief, Appellants respectfully request that this Court (A) reverse and vacate the Retention Order insofar as it authorized Jeffrey L. Sapir, acting as the Chapter 7 Trustee of Innomed Labs, LLC, to retain and employ Robinowitz Cohlan Dubow & Doherty, LLP as special counsel to the Trustee; (B) remand this matter to the Bankruptcy Court for further proceedings consistent with this Court's decision; and (C) grant such other relief as this Court deems proper.

Dated: New York, New York
       July 25, 2007

                          KLESTADT & WINTERS, LLP
                          Counsel to Hogil Pharmaceutical Corp.
                          and Howard Wendy

                          By: /s/Tracy L. Klestadt
                               Tracy L. Klestadt (TK-3591)
                               Patrick J. Orr (PO-7617)
                          Attorneys for Appellants
                          292 Madison Avenue, 17th Floor
                          New York, New York 10017
                          Tel. (212) 972-3000
                          Fax: (212) 972-2245