ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X
                                      :
In re:                                :
                                      :     Chapter 7
        INNOMED LABS, LLC,            :
                                      :     Bankruptcy Court
                          Debtor.     :     Case No.
                                      :     02 B 22644 (ASH)
- - - - - - - - - - - - - - - - - - - X
                                      
HOGIL PHARMACEUTICAL CORP. and HOWARD       **07 Civ. 4778 (WCC)**
WENDY,                                :
                                      
                          Appellants, :
                                      
        - against -                   :
                                      
JEFFREY L. SAPIR, as Chapter 7 Trustee, :    **OPINION**
                                             **AND ORDER**
                          Appellee.   :
                                      :
- - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                        KLESTADT & WINTERS, LLP
                        **Attorneys for Appellants**
                        292 Madison Avenue, 17th Floor
                        New York, New York 10017

TRACY LEE KLESTADT, ESQ.
PATRICK J. ORR, ESQ.

        Of Counsel


                        ROBINOWITZ COHLAN DUBOW & DOHERTY
                        LLP
                        **Attorneys for Appellee**
                        199 Main Street, 5th Floor
                        White Plains, New York 10601

BRUCE MINKOFF, ESQ.

        Of Counsel

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

Copies E-Mailed to Counsel of Record

**Conner, Sr. D.J.:**

Appellants Hogil Pharmaceutical Corp. ("Hogil") and Howard Wendy ("Wendy") appeal from an order of U.S. Bankruptcy Judge Adlai S. Hardin, Jr. authorizing appellee, the Chapter 7 Trustee (the "Trustee") of Innomed Labs, LLC ("Innomed" or "debtor"), to retain special legal counsel to investigate and possibly litigate claims by Innomed against appellants. Appellants argue that the law firm appointed as counsel to the Trustee, Robinowitz Cohlan Dubow & Doherty, LLP ("RCDD" or "the firm"), holds interests adverse to the estate and is not disinterested. For the following reasons, the order is affirmed.

## BACKGROUND

The matter before us arises out of a business relationship gone sour. Appellant Wendy and Dr. Gilbert Spector ("Spector") were once co-owners of both Hogil and Innomed. (Obj. Applic. Employ Special Counsel to Trustee ¶ 1.) Wendy is currently the chairman of Hogil and the principal of Innomed. (*Id.*) Innomed filed a Chapter 11 petition on April 30, 2002.[1] (*Id.* ¶ 2.) At some point before Hogil and Innomed filed for bankruptcy, Wendy discovered that Spector was planning to oust him from his role in the management of both companies. (*Id.* ¶ 4.) Wendy managed to prevent this, and had Spector removed instead. (*Id.*) This led to litigation between Wendy, his wife, Hogil, Innomed and Spector; according to appellants, that litigation is still ongoing.[2] (*Id.*)

---

[1] Hogil filed for bankruptcy as well, on November 2, 1999. (*Id.*) That case was closed in June 2001, re-opened for a limited purpose in February 2006, and then closed again in September 2006. (*Id.* ¶ 2.)

[2] As discussed below, the record is extremely thin on the details of these lawsuits, and it is not clear from the record whether any are in fact still pending. Because appellants indicate that Spector's and Wendy's wives have been involved in at least some of the litigation, and because

1

On October 10, 2006, the Trustee petitioned the Bankruptcy Court for approval to retain RCDD as special counsel. The proposed agreement between RCDD and the Trustee called for the former to investigate several potential claims by Innomed against Hogil and Wendy,[3] as well as "such other claims . . . as may be revealed during the investigation." (Petition, Ex. 2 ¶ 2.) After the investigation was complete, RCDD would consult with the Trustee and, if RCDD and the Trustee mutually deemed it appropriate, commence litigation. (*See id.*). Spector agreed to pay all of RCDD's legal fees and expenses for the firm's work in the matter, subject to the Bankruptcy Court's approval of the fees. (*See id.* ¶ 4.) To the extent RCCD's work led to a recovery by the estate of more than $10,000, Spector would then have a priority administrative claim against the estate from the portion of the recovery exceeding $10,000 for reimbursement of the fees and expenses he paid. (*Id.* ¶ 5.)

Appellants objected to this arrangement on the grounds that RCDD was not disinterested and held interests adverse to the estate, and that all of the potential claims were time barred. (*See* Obj. Applic. Employ Special Counsel to Trustee ¶ 6.) After receiving the written objections and response, the Bankruptcy Court held two hearings on the matter: one on March 22, 2007 and the other on March 28, 2007. By an order dated April 3, 2007 (the "Order"), the Bankruptcy Court approved the Trustee's employment of RCDD pursuant to 11 U.S.C. § 327(a) "for the specified limited purposes

---

the facts indicate general animosity between the two families, we will refer to "the Wendys" and "the Spectors" when it seems appropriate to do so.

[3] The specified claims were for: accounts receivable owed by Hogil to Innomed; "possible use by Wendy of Innomed funds to acquire certain membership interests in Innomed in violation of Innomed's Amended and Restated Operating Agreement"; "Wendy's possible failure to make an initial equity contribution to Innomed"; the listing of a capital contribution from Wendy on Innomed's tax return that Wendy may not have actually made; and "possible claims arising from Wendy's control of both Innomed and Hogil." (Petition, Ex. 2 ¶ 2.)

limited purposes of: (i) investigating possible claims by Debtor against Hogil Pharmaceutical Corp. and Howard Wendy; and (ii) commencing such litigation against Hogil Pharmaceutical Corp. and/or Howard Wendy . . . as the Trustee and [RCDD] shall mutually deem appropriate." The Order also approved the agreements governing RCDD's compensation. This appeal followed.

## DISCUSSION

### I.    Jurisdiction and Standard of Review

A bankruptcy court's order authorizing a trustee to retain counsel is a final order over which we have appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1). *See In re Kurtzman*, 194 F.3d 54, 57 (2d Cir. 1999); *In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999). We review a bankruptcy court's conclusions of law *de novo. See In re Colonial Realty Co.*, 980 F.2d 125, 130 (2d Cir. 1992); *In re Peters*, 133 B.R. 291, 294 (S.D.N.Y. 1991). We must accept the Bankruptcy Court's findings of fact unless they are clearly erroneous and give "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses." FED. R. BANKR. P. 8013; *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990); *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990).

### II.    The Trustee's Employment of Professionals Under 11 U.S.C. § 327

11 U.S.C. § 327(a) allows a bankruptcy trustee to employ professionals, including attorneys, to assist in carrying out the trustee's duties, provided that the professionals do not "hold or represent an interest adverse to the estate" and are "disinterested." The Bankruptcy Code defines a disinterested person, in relevant part, as one who "does not have an interest materially adverse to the

3

interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." *Id.* § 101(14)(C). Courts have recognized that the "materially adverse" standard of section 101(14)(C) and the "interest adverse to the estate" language of section 327(a) overlap, effectively creating a single standard by which to judge potential conflicts of interest. *See In re WorldCom, Inc.*, 311 B.R. 151, 164 (Bankr. S.D.N.Y. 2004); *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998).

Although the Code does not define the phrase to "hold or represent an interest adverse to the estate," the Second Circuit has adopted the following definition:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*AroChem*, 176 F.3d at 623 (quoting *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985)). An adverse interest "includes any interest or relationship, however slight, 'that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *Granite Partners*, 219 B.R. at 33 (quoting *Roberts*, 46 B.R. at 828 n.26); *see also WorldCom,* 311 B.R. at 163-64. The trustee may not employ a professional that has "'either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors'" or can reasonably be seen as having such an incentive. *Granite Partners*, 219 B.R. at 33 (quoting *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987)). Whether an adverse interest exists is a determination that must be made on a case-by-case basis. *See In re Caldor, Inc.-NY*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996).

A trustee can hire an attorney either for general assistance in administering the estate or as

4

"special counsel" for a limited purpose. *See AroChem*, 176 F.3d at 622; 11 U.S.C. § 327(e). Subsection (e) is the only part of section 327 that discusses the role of special counsel, and it provides that:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e). By its terms, subsection (e) applies only where the proposed special counsel has previously represented the debtor. When, as here, the proposed special counsel has never represented the debtor, the Court must apply the relevant subsection of section 327 (here, 327(a)) and reason by analogy to subsection (e). *See AroChem*, 176 F.3d at 622; *Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir. 1993). We must inquire into whether the special counsel holds or represents an interest adverse to the estate "with respect to the matter on which [the special counsel] is to be employed." Since the role of the special counsel is, by definition, limited, the trustee need only show that there is no adverse interest related to that role itself: "where the interest of the special counsel and the interest of the estate are identical *with respect to the matter for which special counsel is retained*, there is no conflict and the representation can stand." *AroChem*, 176 F.3d at 622 (emphasis in original); *see also Stoumbos*, 988 F.2d at 964; *In re Contractor Tech., Ltd.*, 2006 U.S. Dist. LEXIS 34466, at *17 (S.D. Tex. May 30, 2006); *In re Peters Contracting, Inc.*, 301 B.R. 857, 860 (Bankr. M.D. Tenn. 2003); *In re Best Craft Gen. Contractor & Design Cabinet, Inc.*, 239 B.R. 462, 467 (Bankr. E.D.N.Y. 1999). In the present case, that means RCDD must not have or represent an interest adverse to the estate with respect to the latter's potential claims against appellants.

5

### III.    Application

Appellants' primary argument is as follows: If RCDD is appointed counsel to the trustee, the Spectors, through RCDD, will use the bankruptcy proceedings to "pursue [a] vendetta against Mr. Wendy and his family." (Appellants Br. at 10.) There is great personal animosity between the Wendys and the Spectors, which has led to years of litigation between the two families – litigation that was designed solely to harass the Wendys. (*Id.* at 6, 10.) RCDD has represented the Spectors in at least some of that litigation, and the Spectors have agreed to pay the firm's fees and costs in this matter. (*Id.* at 7, 10.) Therefore, RCDD has or represents an interest adverse to the estate and is not disinterested, because the purpose of its involvement would be simply to harass the Wendys.

Appellants also argue that the representation creates a conflict of interest because the estate may have claims against the Spectors (*id.* at 9-10); the representation would be futile because any claims the estate has against appellants are time barred and the Bankruptcy Court did not make the findings of fact necessary to support its order. (*Id.* at 11-12.)

### A.    The History of Litigation Between the Wendys and the Spectors

Appellants claim that the Spectors and the Wendys have been involved in litigation since 1999 "in various forums and on various claims"; that "Dr. Spector's strategy has been driven more by personal animus than by well reasoned legal analysis" and that RCDD "has represented the Spectors in lawsuits designed to harass Mr. Wendy." (*Id.* at 6, 10.)

We do not doubt that there is bad blood between the Spectors and the Wendys. But with one

6

extremely minor exception,[4] appellants have not given us even the most basic information we would

need to evaluate the claim that this personal animosity has led to frivolous, harassing litigation. We

do not know, for example, how many lawsuits there were, when and where they were brought, who

the parties and attorneys were, what the outcomes were, or whether any of the cases are still open.

Nor do appellants claim that any party or attorney has been sanctioned or disciplined as a result of

these eight years of supposedly frivolous litigation. Appellants' unsupported allegations are not

enough to convince us that the Spectors have been using the courts to "pursue a vendetta" against

the Wendys.

　　The only other evidence of harassment appellants offer consists of proofs of claim the

Spectors allegedly filed at some point in the bankruptcy proceedings.[5] According to appellants, these

claims did not come with any supporting documentation and would likely be subject to objection.

(Appellants Reply Br. at 3.) As the estate already had approximately $8.3 million in claims against

it and no assets, any recovery the Spectors saw on their claims would, appellants believe, be "de

---

　　[4] Alan M. Dubow, of RCDD, appeared on behalf of Dr. Spector on September 20, 2006, in a suit between him and Mrs. Wendy in New York State Supreme Court. (*See id.* at 7.) Appellants tell us nothing else about that lawsuit. According to appellees, however, other counsel had represented Dr. Spector for most of the litigation. (Appellee Br. at 10.) RCDD appeared on Dr. Spector's behalf only after Dr. Spector's original counsel had withdrawn, and solely for the purpose of obtaining a copy of a decision the court had already issued. (Dubow's appearance was necessary because the court would only issue a copy of the judgment to counsel of record.) (*Id.* 10-11.) In the underlying action, in which RCDD was not involved, Mrs. Wendy was the plaintiff and Dr. Spector the defendant. (*See id.* at 10.) The suit was for "attorneys fees in connection with the guarantee of a promissory note." (*Id.*)

　　Appellees also inform us that RCDD represented the Spectors on one other occasion. That representation, which lasted approximately one to two months, involved an effort to prevent the sale to Hogil of the debtor's claims against Hogil for $10,000. (*See id.* at 11-12.) Appellants' brief is silent on this event, and we have no reason to believe it creates a conflict of interest within the scope of RCDD's role in this matter.

　　[5] The proofs of claim are not part of the record on appeal.

7

minimis." (*Id.* at 4.) All of this, according to appellants, shows "how ridiculous the assertion is that the Spectors' motivations have anything to do with the recovery of money." (*Id.*)

We do not agree that the small probable size of any recovery on these claims shows a harassment motive, and given the complete lack of any other evidence in the record to support that allegation, we decline to draw such an inference.

### B.    The Spectors' Relationship with RCDD

Appellants claim that the Spectors will, through RCDD, use the Bankruptcy Court to "pursue [a] vendetta against Mr. Wendy and his family" (Appellants Br. at 10), and that the result of allowing RCDD's involvement will be "the veritable hijacking of the Bankruptcy Court for the purposes of harassing an ex-business partner." (Appellants Reply Br. at 2.) These views are based on the facts that RCDD has represented the Spectors in the past and that the Spectors will be paying RCDD's costs and fees for the firm's work as counsel to the trustee.

### 1.    RCDD's Past Representation of the Spectors

Appellants state that RCDD "has represented the Spectors in lawsuits designed to harass Mr. Wendy." (Appellants Br. at 10.) As noted above, appellants' briefs and the record on appeal fail to provide any specific, factual information that we could use to evaluate this claim. These unsupported allegations are not enough to disqualify RCDD from representing the Trustee in this matter.

### 2.     The Spectors' Status as Creditors and Equity Holders and Their Payment of RCDD's Costs and Fees

Appellants also base their objection on the fact that the Spectors are creditors and Dr. Spector is an equity holder of the debtor. (*Id.* at 8.) To serve as counsel to the trustee, RCDD must not hold or represent an interest adverse to the estate and must be disinterested. *See* 11 U.S.C. § 327(a); *AroChem*, 176 F.3d at 622. The Second Circuit has interpreted the disinterestedness requirement as "'implicat[ing] only the personal interests' of the professional whose disinterestedness is under consideration." *AroChem*, 176 F.3d at 629 (quoting *In re B.H & P, Inc.*, 949 F.2d 1300, 1310 & n.12 (3d Cir. 1991)) (holding that a law firm that had represented interests adverse to a class of creditors "personally does not 'have' such an adverse interest," and is therefore a disinterested person). Appellants do not argue that RCDD's personal interests are adverse to the estate.  And since RCDD's prior representation of the Spectors does not preclude it from being disinterested even if their interests are adverse to the estate, the only remaining issue is the first prong of section 327: whether RCDD holds or represents an interest adverse to the estate.[6]

First, there is some dispute amongst the parties as to whether RCDD is currently representing

---

[6] Appellants cite *In re Vebeliunas*, 231 B.R. 181, 191 (Bankr. S.D.N.Y. 1999) for the proposition that professionals employed by the trustee must "be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them." (Appellants Br. at 10.)  In *Vebeliunas*, the trustee's counsel stated that he "did not believe anything the debtor said in this case," 231 B.R. at 186; the issue before the court was whether this statement showed that counsel was not a disinterested person. Here, on the other hand, there is no indication that RCDD has any personal ill will for another party; the argument against the firm is one of guilt by association.  The dicta appellants cite regarding the need for professionals to "be free of the slightest personal interest" that might affect their conduct is therefore irrelevant: there are no grounds for believing that RCDD has any such interest, and its prior representation of the Spectors cannot create one. *See AroChem*, 176 F.3d at 629.

the Spectors.  Appellants' brief uses the present tense of the verb "represent," although appellants do not say what the representation currently involves.  (*See* Appellants Br. at 8 ("Robinowitz [RCDD] represents Dr. Spector and his wife.").)  Appellee strongly denies that the representation is ongoing (*see* Appellee Br. at 12), and the Trustee's petition to employ RCDD included an affidavit from Mr. Dubow of RCDD stating that RCDD has represented the Spectors only in the two matters discussed above (*see* Petition, Ex. 1 ¶ 4.); those matters appear to have concluded.

In some cases, this would be a critical determination.  The Second Circuit has indicated that a professional is disqualified from representing a trustee only if the professional currently holds or represents an adverse interest:

> [W]e note that section 327(a) is phrased in the present tense, permitting representation by professionals "that do not *hold* or *represent* an interest adverse to the estate." . . . Thus, counsel will be disqualified under section 327(a) only if it presently "hold[s] or represent[s] an interest adverse to the estate," notwithstanding any interests it may have held or represented in the past.

*AroChem*, 176 F.3d at 623 (emphasis in original).  Here, however, it is not necessary to determine whether the representation is still ongoing.  For the following reasons, appellants have failed to show that the Spectors themselves hold an interest adverse to the estate with respect to the scope of RCDD's proposed employment, so ongoing representation of the Spectors would not disqualify the firm from representing the trustee.

### a.    The Spectors as Creditors of the Estate

As to the Spectors' status as creditors of the estate, an attorney who represents a creditor is not prohibited from serving as special counsel to the trustee as well, unless there is an actual conflict of interest.  *See* 11 U.S.C. § 327(c); *In re Burghoff*, 2006 Bankr. LEXIS 3889, at *20 (Bankr. S.D.

Iowa Dec. 11, 2006); *Contractor Tech.*, 2006 U.S. Dist. LEXIS 34466, at *21; *Best Craft*, 239 B.R.

at 467; *In re Pappas*, 216 B.R. 87, 92 (Bankr. D. Conn. 1997) ("This court has in more than one

instance approved a trustee's employment of attorneys who also represented a creditor in an assetless

estate where the creditor in effect guaranteed the payment of the attorneys' fees. . . . So long as there

is no actual conflict of interest, such arrangements are nowhere proscribed."). When the trustee

retains special, rather than general, counsel, all section 327 requires is that the interests of counsel

be identical to the interests of the estate with respect to the matter for which counsel has been

retained. *See AroChem*, 176 F.3d at 622. And when, as here, special counsel's role is to pursue

claims on behalf of the estate, representation of a creditor does not create a conflict of interest: to

the extent special counsel succeeds in its efforts on behalf of the estate, the creditor will benefit as

well because its pro-rata share of the estate's assets will be worth more. *See Stoumbos*, 988 F.2d at

964; *In re Fondiller*, 15 B.R. 890, 892 (Bankr. 9th Cir. 1981); *Burghoff*, 2006 Bankr. LEXIS 3889,

at *20. The interests of the Spectors and the estate are therefore perfectly aligned with respect to the

purpose of RCDD's representation, which, if successful, will enhance the value of the estate and the

Spectors' share of it.

### b.    Dr. Spector as Equity Holder

Appellants argue that by specifically permitting the Trustee's employment of a professional

who represents a creditor, section 327(c) prohibits the employment of a professional who represents

an equity holder. (*See* Appellants Br. at 8-9.) This argument is based on the rule of statutory

construction *expressio unius est exclusio alterius*. The Supreme Court has recently instructed,

however, that "the canon *expressio unius est exclusio alterius* does not apply to every statutory

11

listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (Quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)).

That inference is not justified here. Viewing section 327 in its entirety, it is clear that 327(a) sets out the general rule, and 327(b)-(f) deal with the application of that rule to certain situations: the trustee's operation of the debtor's business (327(b)); the professional's representation of a creditor (327(c)); the trustee's serving as attorney or accountant for the estate (327(d)); retention of special counsel (327(e)); and the prohibition on the trustee's employment of someone who served as examiner in the case (327(f)). This is not the sort of associated grouping that would support appellants' interpretation; it is not, for example, a list of parties in interest that trustee's counsel may permissibly represent.[7]

Some courts do apply a *per se* prohibition to the representation of both a major shareholder[8] and the estate, although not for the reason appellants urge. *See, e.g.*, *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 754 (Bankr. N.D. Tex. 1988) (holding that such dual representations create a conflict of interest). The majority, and better, view rejects that rigid approach and instead allows the court to review potential conflicts based on the facts of the case before it. *See, e.g.*, *In re Huntco, Inc.*, 288

---

[7] Appellants' reliance on *In re Palm Coast, Matanza Shores Ltd. Partnership*, 101 F.3d 253 (2d Cir. 1996), is misplaced. The issue there was whether the trustee could hire his own real estate firm to represent the estate under section 327(d), which states that the trustee may serve as attorney or accountant to the estate. *See id.* at 255. Section 327(d) specifies two capacities in which the trustee himself can serve the estate, and is therefore much more appropriately subject to the rule *expressio unius est exclusio alterius* than 327(c), or 327 in its entirety.

[8] The record does not indicate the size of the Spectors' stake in Innomed.

B.R. 229, 234 (Bankr. E.D. Mo. 2002) (adopting "[t]he majority position . . . that representation of principal shareholders is not *per se* to [sic] the representation of an interest adverse to the estate") (citing cases); *In re Huddleston*, 120 B.R. 399, 402 (Bankr. E.D. Tex. 1990). We agree with the *Huntco* court that 327(a) calls for a "flexible, fact specific analysis." *Huntco*, 288 B.R. at 234; *see also AroChem*, 176 F.3d at 621 ("When evaluating [a] proposed retention, a bankruptcy court 'should . . . take[] into account the particular facts and circumstances surrounding each case . . . .'") (quoting 3 Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 327.04[1][a]).

Turning to the facts of this case, there is no reason to disqualify RCDD under section 327. Appellants argue strenuously that if RCDD is appointed Trustee's counsel, the Spectors will use the firm to harass the Wendys through the bankruptcy process. Their arguments are based on the notion that RCDD represents an interest adverse to the Wendys. But the Bankruptcy Code prohibits only the appointment of professionals who represent an interest adverse to *the estate*. The Wendys are not the debtors; Innomed, a separate legal entity, is the debtor. RCDD does not hold or represent an interest tending to reduce the value of the estate. *See AroChem*, 176 F.3d at 623. On the contrary, RCDD is tasked with increasing the value of the estate. And there is no indication that RCDD has or represents an interest likely to create a dispute in which the estate is a rival claimant, or that the firm possesses such "a predisposition under circumstances that render such a bias against the estate." *Id.* (internal quotation marks and citation omitted). For all the talk of vendettas, harassing litigation and the hijacking of the bankruptcy proceedings, appellants simply have not explained how the estate, as distinguished from the Wendys, would be harmed by this appointment.[9]

---

[9] Again, we do not doubt that there is real animosity between the Wendys and the Spectors. However, appellants are protected by the facts that RCDD can not commence litigation against them without the Trustee's approval, and any fees the firm seeks to recover for its role in

The Bankruptcy Court reached the perfectly logical and well-supported conclusion that appointing RCDD can only benefit the estate, and that the fee arrangement, far from being a reason to disqualify the firm, was in fact quite favorable to the estate. The estate may have claims against the Wendys and Hogil, but it is unable to pursue those claims because it has no assets. Dr. Spector has offered to pay the costs of having RCDD investigate and potentially litigate those claims, and the estate would reimburse Dr. Spector only in the event the estate recovers more than $10,000. We agree with Judge Hardin's analysis:

> [A]s far as what is before me now, the creditors of this estate are being offered a freebie; at no cost to the Trustee or the estate, an investigation of claims which one creditor constituency, namely Dr. Spector, believes have merit . . . but which the Trustee apparently is not willing to undertake upon his own hook since there are no funds in the estate to fund such an investigation . . . . This is in essence a funding mechanism that will enable the estate to at least investigate and possibly benefit from these claims. There isn't any other game in town with regard to these potential claims . . . .

(3/22/07 Hr'g Tr. at 30.) Under these circumstances, and regardless of the personal history between the Spectors and the Wendys, the Bankruptcy Court correctly concluded that RCDD does not hold or represent an interest adverse to the estate with respect to the matters for which the firm will be employed.

### C.     Appellants' Other Arguments

Appellants point out that Innomed has claims against Dr. Spector for "breach of fiduciary duty and corporate opportunity." (Appellants Br. at 10.) Appellants argue that RCDD's representation of the Trustee in this matter therefore creates a conflict of interest: "[I]t is in the

_____

this matter are subject to the approval of the Bankruptcy Court. (*See* Petition, Ex. 2 ¶¶ 2(e), 4.)

14

estate's interest to pursue valid claims . . . against Dr. and Mrs. Spector. And, it is in Dr. and Mrs. Spector's interest to oppose such claims. [RCDD] therefore represents two persons with an interest adverse to the estate . . . ." (*Id.*)

This argument would have merit if appellee were seeking to retain RCDD for the general administration of the estate or to pursue claims against the Spectors. But neither is the case. RCDD will serve as special counsel, which means that appellee need only show that the interests of RCDD and the estate are aligned with respect to the matter for which RCDD is retained. *See AroChem*, 176 F.3d at 622. As discussed above, those interests coincide. Claims against the Spectors are outside the scope of RCDD's representation of appellee, which means they do not create a conflict of interest that would bar that representation. *See id.*

Appellants also argue that RCDD's appointment should be prohibited because all of the claims the firm would be investigating are either time barred or are matters that the Trustee lacks standing to pursue. (*See* Appellants Br. at 11-12.) The Bankruptcy Court's Order authorizing the appointment, however, is not limited to any specific claim or claims; it authorizes the Trustee's employment of RCDD for the purpose of "investigating possible claims by Debtor against Hogil Pharmaceutical Corp. and Howard Wendy." (Order at 2.) The parties disagree as to when the most recent events potentially giving rise to a claim occurred and whether the Trustee has standing to pursue some of the claims. (*Compare* Appellants Br. at 11-12 *with* Appellee Br. at 20.) These are the sort of issues RCDD is tasked with investigating. It would be improper for the Court to pre-empt that investigation, and the record is insufficient for us to make our own determination even if we were inclined to do so.

Finally, appellants argue that the Bankruptcy Court failed to make findings of fact sufficient

15

to support its retention Order. (Appellants Br. at 12.) The Order, however, stated that the court was "satisfied that [RCDD] represents no interests adverse to the Chapter 7 Trustee, the Debtor or the Debtor's estate in the matters upon which it is to be engaged." (Order at 2.) At the second hearing on the motion to disqualify RCDD, Judge Hardin observed: "In that capacity [investigating claims against appellants] there is no adversity between the firm and its client, Dr. Spector, its threshold client and the estate. I think there's no doubt about that." (3/28/07 Hr'g Tr. at 8.) It is clear from these statements that the Bankruptcy Court made the requisite findings of fact to support the appointment of RCDD, and for all of the reasons discussed above, it is clear that the Court's findings of fact and conclusions of law were correct. Contrary to appellants' assertion, the Court was not required to issue a written opinion in conjunction with its Order.

## CONCLUSION

For all of the foregoing reasons, the order of the Bankruptcy Court granting appellee's petition to employ Robinowitz Cohlan Dubow & Doherty, LLP as special counsel is affirmed, and appellants' appeal is denied.


SO ORDERED.

Dated: White Plains, New York
       January 28, 2007

                                        _____
                                         Sr. United States District Judge